**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
*******************************************
DARREN S. JOHNSON,                         *
1101 Golf Course Drive                     *
Mitchellville, MD  20721                   *
                                           *
        Plaintiff                          *
                                           *
        v.                                 *         C.A.
                                           *
THOMAS J. VILSACK, Secretary,              *
US DEPARTMENT OF AGRICULTURE               *
1400 Independence Avenue, SW               *
Washington, D.C.  20250                    *
                                           *
        Defendant.                         *
*******************************************
```

### COMPLAINT - CIVIL RIGHTS

### (JURY TRIAL DEMANDED)

**I.  JURISDICTION AND VENUE**

      1.      This is an action for declaratory relief, injunctive relief, back pay, compensatory damages and other appropriate relief, legal and equitable, brought by Plaintiff Darren S. Johnson, to redress violations by the Defendant of Plaintiff's civil rights.  The jurisdiction of this Court is invoked to secure the protection of and to redress the deprivation of rights secured to Plaintiff by the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, (Supp. II. 1991) (hereinafter, "Title VII"), which provides for injunctive, equitable and other relief against discrimination in employment on the basis of race, religion, sex, national origin and color, and which also provides a cause of action for retaliation and reprisal.  This action also states a claim under the Equal Pay Act of 1963 29 U.S.C. § 206d as amended.

The jurisdiction of this Court is also invoked under 28 U.S.C. § 1343, this being a suit authorized and instituted pursuant to the Civil Rights Act of 1964.

2. This proceeding is instituted in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391, as the judicial district in which the cause of action arose and in which the Defendant, an agency of the United States Government, is located and doing business.

3. This is a civil action and the amount in controversy exceeds $10,000 (Ten Thousand Dollars), exclusive of interest and costs.

## II. PARTIES

4. Plaintiff Darren S. Johnson is a Black male citizen of the United States who at all relevant times an employee of the US Department of Agriculture, an agency of the United States government.

5. Defendant is Thomas J. Vilsack, in his official capacity as Administrator of the United States Department of Agriculture.

## III. STATEMENT OF FACTS

6. Plaintiff Darren S. Johnson is an African American male who was born on October 5, 1976.

7. Plaintiff began his employment with Defendant US Department of Agriculture ("USDA") in 2012, which was headquartered in Washington, DC where he was an Appeals Officer within USDA in the National Appeals Division.

8. Plaintiff was a GS-13 from January 2012 to February 2018. He was given a temporary promotion to GS-14 from about July 2015 to October 2015, serving as Supervisory Appeals Officer.

9. Plaintiff Johnson was served successfully in his capacity as Supervisory Appeals Officer.

10. Plaintiff Johnson had to meet OPM position requirements to serve as Supervisory Appeals Officer.

11. Both the Director of the National Appeals Division and the Assistant to the Director of the National Appeals Division both stated that Plaintiff Johnson performed admirably in the position of Supervisory Appeals Officer.

12. Plaintiff Johnson at all times relevant was an Appeals Officer.

13. Plaintiff Johnson no longer occupies that position at this time.

14. As a GS-13 Appeals Officer, Mr. Johnson's primary duties consisted of writing decisions and from time to time supervising a group of employees performing work at the GS-13 level. He provided administrative and technical supervision necessary for accomplishing the work of the unit. Performed administrative and human resource management functions relative to the staff supervised. Established guidelines and performance expectations for staff members, which are clearly communicated through the formal employee management system. Observed workers' performance; demonstrated and conducted work performance critiques. Formulated and developed strategies for presenting cogent legal decisions. Provided direct authoritative assistance to staff of GS-13s, Appeals Officers and support staff.

15. On or about May of 2015, Jennifer Nicholson, then Supervisory Appeals Officer left for a position with the USDA Risk Management Agency (RMA).

16. Jennifer Nicholson cited the stress of working with Steven Silverman, Director of the National Appeals Division, as a primary reason for her seeking different employment. She also told Plaintiff Johnson that he would be a great replacement based on his performance.

17. On or about June of 2015, Steven Silverman, Director, and Steve Placek, Assistant to the Director, informed the staff that they would have the opportunity, if qualified to serve as Supervisory Appeals Officer for a 90-day period.

18. Plaintiff Johnson qualified and served for a 90-day period from about July 2015 to October 2015.

19. On or about July of 2016, Plaintiff Johnson received a call from the Deputy Western Regional Director applauding his writing on a decision issued.

20. A White female who also qualified was allowed to serve for a 180-day period from about November 2015 to March 2016.

21. On or about April of 2016, while still occupying the position of GS-13- Appeals Officer, Mr. Johnson was denied a promotion to the GS-14/GS-15 Supervisory Appeals Officer Position.

22. Plaintiff Johnson was denied the promotion to the GS-14/GS-15 position in favor of a White female.

23. On or about April of 2016, the White female declined the position in favor of a position with the Social Security Administration.

24. Plaintiff Johnson had the highest-ranking scores from OPM for both the GS-14 and GS-15 grade levels for the Supervisory Appeals Officer position.

25. The National Appeals Division has without deviation selected the next highest ranked applicant on the Best Qualified list submitted by OPM when a selectee declines the position.

26. In April of 2015, with the Best Qualified list still active, and Plaintiff Johnson ranked highest on the list, he was denied promotion to the GS-14/GS15 Supervisory Position, in favor of Jennifer Nicholson, a white female, that was brought back to be the position of Supervisory Appeals Officer at the GS-15 level without having to apply.

27. Steven Silverman, Steve Placek, both confirmed that Jennifer Nicholson was brought back because she was unhappy at RMA.

28. The National Appeals Division has never had an African American in a supervisory position at agency headquarters in Alexandria Virginia, where Plaintiff Johnson at all times performed his duties within USDA.

29. Prior to Jennifer Nicholson's immediate return, Steven Silverman, approached Plaintiff Johnson and informed him that when created, he would receive the position of Senior Appeals Officer/Attorney Advisor at the GS-14 level.

30. On or about July of 2016, Plaintiff Johnson was nominated and selected as the first recipient of the Director's Award for Outstanding Service, to be received at the annual conference on or about August of 2016.

31. No other employee in headquarters received the Director's Award for Outstanding Service.

32. On August 8, 2016, Plaintiff Johnson's brother was murdered.

33. On or about August of 2016, Plaintiff Johnson declined to attend the annual conference as he was still in morning.

34. On or about August of 2016, both Steven Silverman and Jennifer Nicholson, insisted that Plaintiff Johnson show up to receive the Director's Award for Outstanding service because the Deputy Secretary of USDA would be in attendance.

35. Plaintiff Johnson declined as attendance was not mandatory citing a White female colleague, also employed at agency headquarters failing to attend several conferences without penalty.

36. On or about November of 2016, Plaintiff Johnson's performance evaluation was downgraded in the non-critical category of participation, specifically for not attending the annual conference.

37. On or about November of 2016, Plaintiff Johnson appealed the performance evaluation, and the specific language was removed but the category was not upgraded.

38. For the 2016 performance evaluation, a white female, and a white male colleague, both of whom would go on to be selectees for the GS-14 Attorney Advisor position, were downgraded in the critical performance categories of writing.

39. On or about January of 2017, Plaintiff Johnson was selected for the position of Deputy Eastern Regional Director by the Director of the Eastern Region after approval from Steven Silverman, Director of the National Appeals Division. Hearing of his selection, Jennifer Nicholson approached Plaintiff Johnson and stated that he would do an excellent job as Deputy Director.

40. The Deputy Eastern Regional Director position is identical in duties and responsibilities to the Supervisory Appeals Officer position. The only significant difference is that the Supervisory Appeals Officer position is a GS-14/GS-15 position as it is located in headquarters.

41. Both positions require supervision, the Supervisory Appeals supervision Appeals Officers/Attorney Advisors, and the Deputy Regional Director supervising Hearing Officers/Administrative Judges.

42. Both positions require the critique and review of the work product of others, as well as well issuing significant independent work product.

43. Plaintiff Johnson declined the position due to his family still morning the loss of his brother with the assailant still on the run. Plaintiff Johnson did not find it appropriate to accept a position that would require immediate relocation to Indiana.

44. On or about December of 2016, Steve Silverman inquired with Plaintiff Johnson as to why he didn't take the position in the region.

45. On or about November of 2016, the position of Appeals Officer G-13 was reclassified as Attorney Advisor GS-11/12/13/14.

46. Steven Silverman and Steve Placek advised all employees to apply for both the GS-13 and GS-14 grade levels as they may not make the Best Qualified list for a particular position.

47. Just as with the Supervisory Appeals Officer position, the Deputy Eastern Regional Director position, Plaintiff Johnson was top-ranked for all applicable grade levels, GS-13, and GS-14.

48. On or about February of 2017, while still occupying the Appeals Officer GS-13 position, Plaintiff Johnson was denied promotion to the Attorney Advisor GS-14 position in favor of two White females and a white male.

49. On or about February of 2017, Plaintiff Johnson declined a lateral move to the GS-13 Attorney Advisor position.

50. Agency cited Plaintiff Johnson's writing as reason for his non-selection to the GS-14 position. Agency never cited Plaintiff's writing as an issue when selected for the temporary Supervisory position or when selected for the position of Deputy Director of

the Eastern Region.

51. From 2012 until 2016, Plaintiff Johnson received the highest possible rating of "Exceeds Fully Successful" in the critical categories of writing for each evaluation under 3 (three) different supervisors.

52. From 2012 until he left in 2018, Plaintiff Johnson received the highest score possible, a 6 (six), in the independently judged annual writing competition for the National Appeals Division.

53. From 2011 when he was a contractor until 2017 prior to his denial of promotion, Plaintiff Johnson's writing was never downgraded.

54. From 2011 to 2017, serving as both Appeals Officer and Supervisory Appeals Officer, management never gave any indication to Plaintiff Johnson that his performance was unsatisfactory for promotion.

55. Two of the selectees for the GS-14 Attorney Advisor Position had their performance downgraded in the critical position of writing and did not receive an outstanding performance rating.

56. Jennifer Nicholson as Supervisory Appeals Officer/Attorney Advisor, gave all recommendations for promotion to the GS-14 Attorney Advisor position with final approval from Steven Silverman.

57. Jennifer Nicholson cited as justification for their selection that the three white selectees all received Outstanding performance ratings for the 2016 year which was directly applicable to hiring for the GS-14 position.

58. Jennifer Nicholson repeatedly maintained that she never reviewed or had possession of the 2016 performance evaluations she claimed to rely on for

recommendation.

59. Jennifer Nicholson insists she never recommended one white female selectee for the GS-14 position but was overruled by Steven Silverman.

60. Steven Silverman cited that he never overruled any recommendation.

61. Jennifer Nicholson has never provided any notes or explanation how candidates for the GS-14 position were evaluated and ranked.

62. Steven Silverman, Steve Placek, and Jennifer Nicholson, stated that they never kept any notes on how they evaluated, ranked, and eventually made selections. All only cited a brief discussion. At no point, has Management has provided any information as what, if any objective criteria were used to rank the candidates.

63. Steven Silverman and Steve Placek stated that it was their practice to not keep any notes. Indicating that they did not keep notes on selection of the Supervisory position of which Plaintiff Johnson was denied promotion twice in favor of two white females with one selected without even applying for the position.

64. On or about February of 2017, Plaintiff Johnson initiated an EEO complaint realizing that his non-promotion at the National Appeals Division headquarters was a concerted effort to not promote African American within headquarters.

65. From the time of his complaint until he left in February of 2018, Steven Silverman and Jennifer Nicholson engaged in concerted efforts and activities to overly critique Plaintiff's work product. Plaintiff Johnson was in a unique position make the assertion as he worked under Jennifer Nicholson for several years and was the Acting Supervisory Appeals Officer working closely with Steven Silverman. Thus, he was uniquely familiar with their editing and critiquing styles, and immediately recognized

their swift deviation after he filed an EEO complaint.

66.     Boilerplate language that was signed off by both Jennifer Nicholson and Steven Silverman when used by the selectees became objectionable when used by Plaintiff Johnson.

67.     When challenged as to whether boilerplate language had changed or if a new directive had been issued as to decisions, Jennifer Nicholson and Steven Silverman either refused to answer or simply stated "No, a new directive had not been issue."

68.     In many instances something as simple as an issue statement had become objectionable to management. When confronted on several occasions that a selectee had used the exact same issue statement, Jennifer Nicholson, rescinded the edits but refused to acknowledge fault.

69.     Managements actions caused severe stress on Plaintiff Johnson causing him to research decisions issued days or weeks prior and sometime the day of the critique given to illustrate managements approval of boilerplate language they now found objectionable in Plaintiff Johnson's work product.

70.     Steven Silverman would often make damning critique of Plaintiff Johnson's work product without reading the entire decision only to find that what he was critiquing was addressed by Plaintiff Johnson later in the decision. When confronted with the evidence of his mistakes, Steven Silverman would not admit fault.

71.     Steven Silverman was so focused on critiquing Plaintiff Johnson's work product at any cost that he would often critique language that he put in personally because he attributed it to Plaintiff Johnson. When brought to Steven Silverman's attention that he wrote the very work he was critiquing, Steven Silverman would never admit fault but

only leave the language.

72. Under Section 15.5, of the Collective Bargaining Agreement, entitled "Employee Resource for Explanation of Performance", it is required that "[w]hen an employee is unclear about what is required to attain…., or what is required to improve their performance, the employer may request clarification from the supervisor. A summary of the guidance will be documented, with a copy to the employee". However, each time Plaintiff Johnson requested clarification as to whether there was; (1) specific cases we should or should not be following, or (2) whether there was guidance issued as to how we should address certain things, as had been the case in the past, management either never responded or refused to provide clarification.  Management's only affirmative response was that Plaintiff Johnson was correct there was no directive issued.

73. On or about September of 2017, Management lowered Plaintiff Johnson's performance evaluation in the critical writing categories for the first time in his six years with the agency. Plaintiff Johnson received the highest rating of "exceeded highly successful" in the writing standards and measures set forth by the Agency in specific critical categories of writing competency from 2012 through 2016.  Only in 2017, after the Plaintiff filed an EEO complaint, was his performance lowered in the critical categories of writing competency.

74. Under section 15.3 of the Collective Bargaining Agreement, entitled "Performance Plans", it is required that "the minimum of a mid-year review is required" to give an employee the opportunity to review current performance and improve if necessary.  For the first time in six years, Plaintiff Johnson never received a mid-term performance review.  When confronted on the lack of mid-term, Jennifer Nicholson that

there was no need to counsel Plaintiff because his writing was not deficient. Yet, Plaintiff's performance was lowered from previous years at the direction of Steven Silverman.

75. Management's lowered performance rating in the critical categories of writing competency, was the result of a concerted effort by management to justify Plaintiff's non-selection after he filed his EEO complaint.

76. Again, prior to his non-selection, Plaintiff was selected to the position of Deputy Director of the Eastern Region. This position of Deputy Director is equivalent to the Supervisory Appeals Officer position Mrs. Nicholson held in duties and differed only in compensation. Under section 24.2 B. Supervisor Reviews, of the CBA, the Regional Deputy Director, is required to review Administrative Judge's (formerly hearing Officer) decisions prior to issuance addressing the following criteria: identify the issue; organization; style, logic/analysis; and mechanical errors.

77. Plaintiff Johnson was selected for this position which required the selectee to write decisions, perform supervisory duties including critiquing and editing the work of other employees. Plaintiff Johnson was found qualified for this position by a panel consisting of the Eastern Regional Director, two Western Regional Deputy Directors, and the Southern Regional Deputy Director. Further, Steven Silverman was ultimately responsible for approving the selection because he was the Eastern Regional Director's supervisor.

78. Plaintiff Johnson maintained the superior writing skills and abilities that he displayed over seven years with the agency, including as a contractor, to be selected to a position equivalent to his supervisor, only to turn around less than a month later and not

be selected for promotion in position he performed in admirably for six years.

79. Management never intended to promote African Americans within headquarters of the National Appeals Division. Plaintiff Johnson was the only African American male ever to be employed within headquarters of the National Appeals Division.

80. From January 2012 until his departure in February of 2018, Plaintiff Johnson never received a Quality Step Increase (QSI) from the Agency. Agency maintained that there were only 5 (five) total for the entire agency including headquarters, the eastern, southern, and western regions.

81. Two of the selectees, a white female and a white male, for the GS-14 position of Attorney Advisor received a total of 4 (four) QSIs during the same time period. In both cases, it was cited their participation in a highly sensitive project that Plaintiff Johnson was the team lead.

82. In 2014, Plaintiff Johnson, due to his ability to work independently and efficiently, Management tasked Plaintiff with heading a project to merge the various appeals offices throughout USDA. Plaintiff Johnson and a white female selectee did the majority of the work on the project. The white male selectee was brought in later.

83. Plaintiff Johnson never received a QSI for his work on the project or for receiving the highest rating of "Outstanding" for several years.

84. No one was ever told who received a QSI in the agency as it was not publicized. As such Plaintiff Johnson never knew who received a QSI until he filed his EEO complaint.

85. In 2016, the eventual male white selectee was downgraded in the writing competency category. While acting as Supervisory Appeals Officer, it was brought to

Plaintiff Johnson's attention by the Deputy Director that the white male selectee make-up false information to justify his written decisions. This information was also relayed to Jennifer Nicholson.

86.  On or about 2015, Plaintiff Johnson was chosen to speak at a national agricultural conference in South Carolina. Before he arrived until he left in February of 2018, no one outside of the Directors and Deputy Directors has ever been chosen to speak on behalf of the agency at a national conference. Jennifer Nicholson, as Supervisory Appeals officer was never selected to speak on behalf of the agency at a national conference.

87.  Jennifer Nicholson has made several false claims for Plaintiff's non-selection including that all selectees received an Outstanding rating. Two of the selectees stated that they did not receive Outstanding ratings. In fact, one selectee, a white female, stated that she never received an Outstanding Rating at any point in her career with the National Appeals Division.

88.  Under the supervision of Jennifer Nicholson, Plaintiff Johnson was the only Appeals Officer to ever be selected to review his colleagues work as a defacto supervisor. Jennifer Nicholson often tasked Plaintiff Johnson with preforming supervisor duties editing and critiquing colleagues work to assist with the backlog. No other colleague performed these duties.

89.  On or about 2016, Plaintiff Johnson developed editing guidance for the employees that implemented agency wide for employees.

90.  On or about 2013, Jennifer Nicholson and Steve Placek, used writing to dismiss an African American female, using similar tactics utilized on Plaintiff.

91.  In 2012, Plaintiff received a performance rating of "Outstanding" and "Exceeds

Fully Successful" in the critical category of writing competency.

92. In 2013, Plaintiff received a performance rating of "Outstanding" and "Exceeds Fully Successful" in the critical category of writing competency.

93. In 2014, Plaintiff received a performance rating of "Outstanding" and "Exceeds Fully Successful" in the critical category of writing competency.

94. In 2015, Plaintiff received a performance rating of "Outstanding" and "Exceeds Fully Successful" in the critical category of writing competency.

95. In 2016, Plaintiff received a Performance rating of "Superior" and "Exceeds Fully Successful" in the critical category of writing competency. He was downgraded in the non-critical category of participation for non-participation at the annual conference despite being the first recipient of the Director's Award for Outstanding Service.

96. In 2017, Plaintiff received a Performance rating of "Superior" and downgraded in the writing category for the first time after he filed an EEO complaint.

97. None of the selectees ever received the Director's Award for Outstanding Service unlike Plaintiff.

98. None of the selectees ever performed supervisory duties as an appeals officer unlike Plaintiff.

100. None of the selectees ever acted as Supervisory Appeals Officer unlike Plaintiff.

101. None of the selectees spoke on behalf of the agency at a national conference unlike Plaintiff.

102. None of the selectees headed a highly sensitive project that leads to the merging of USDA appeals offices.

103. After his non-selection to the GS-14 position of Attorney Advisor, many

employees approached and called Plaintiff in disbelief as to his non-selection.

104. Agency's concerted efforts to not promote African American within headquarters caused plaintiff severe embarrassment and agency's harassment of his work product after he filed a complaint caused severe stress and anxiety which caused issues in his personal and professional relationships.

**STATEMENT OF CLAIM**

    A.    **First Cause of Action: Discrimination—Hostile Environment**

Plaintiff alleges and re-alleges paragraphs 6-104 above, as if restated fully and separately herein.

.    The effect of the Defendant's acts and practices as enumerated herein has been to intentionally deprive Plaintiff Darren S. Johnson of rights secured to him by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., because Defendant, solely because of Plaintiff's gender, has caused Plaintiff Johnson to be subjected to a continuing pattern of harassment and an abusive and hostile environment, with the result that Plaintiff suffered has been denied equal employment opportunities and Plaintiff has been caused to suffer mental anguish and emotional distress.

    B.    **Second Cause of Action: Discrimination—Disparate Treatment**

.    Plaintiff alleges and re-alleges paragraphs 6-104 above, as if restated fully and separately herein.

.    The effect of the Defendant's acts and practices as enumerated herein has been to intentionally deprive Plaintiff Darren S. Johnson of rights secured to him by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., because Defendant, solely

because of Plaintiff's gender and protected activity, has deprived Plaintiff Johnson of equal opportunities in the terms and conditions of Plaintiff's employment, and has intentionally deprived Plaintiff of the same opportunity to receive grade sustaining assignments, promotional opportunities, to receive accurate and lawful performance appraisals, and to receive bonuses and performance awards, as Defendant has provided to females.  By said acts, Defendant has violated Title VII of the Civil Rights Act of 1964, as amended.

    **C.**    **Third Cause of Action:  Discrimination—Retaliation and Reprisal**

.    Plaintiff alleges and re-alleges paragraphs 6-104 above, as if restated fully and separately herein.

.    Plaintiff alleges that, solely because of Plaintiff 's race, gender and protected activity, Defendant has engaged in retaliatory conduct in violation of Plaintiff Johnson's rights secured to him by Title VII of the Civil Rights Act of 1964, as amended.

.    Defendant has continuously denied Plaintiff a permanent promotion to the GS-14, Appeal's Officer position, while at the same time promoting females who were no more qualified for promotion than Plaintiff.

.    By said acts of retaliation, Defendant has violated Plaintiff's rights as secured to him by Title VII of the Civil Rights Act of 1964, as amended.

    **D.**    **Third Cause of Action:  Discrimination—Religion**

Plaintiff alleges and re-alleges paragraphs 6-104 above, as if restated fully and separately herein.

.    The effect of the Defendant's acts and practices as enumerated herein has been to intentionally deprive Plaintiff Darren S. Johnson of rights secured to him by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., because Defendant, solely

because of Plaintiff's religion and protected activity, has deprived Plaintiff Johnson of equal opportunities in the terms and conditions of Plaintiff's employment, and has intentionally deprived Plaintiff of the same opportunity to receive grade sustaining assignments, promotional opportunities, to receive accurate and lawful performance appraisals, and to receive bonuses and performance awards, as Defendant has provided to females. By said acts, Defendant has violated Title VII of the Civil Rights Act of 1964, as amended.

As a result of the acts and practices complained of herein, Plaintiff Darren S. Johnson has suffered and is still suffering loss of income, wages, employment opportunities, promotion, benefits, personal and professional esteem, and Plaintiff has suffered and is still suffering mental anguish and emotional distress.

.  Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs complained of herein, and Plaintiff is now suffering and will continue to suffer irreparable injury as a result of Defendant's acts and conduct as described herein. Unless Defendant is restrained by Order of this Court, Plaintiff will continue to suffer said irreparable injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays this Honorable Court to advance this case on the docket, order a jury trial, cause a hearing in this case to be in every way expedited, and upon such hearing to:

1. Issue a declaratory judgment that Defendant's acts and practices complained of herein violated Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, as amended.

2. Order Defendant to make Plaintiff whole for the discrimination and retaliation Plaintiff has suffered as a result of the acts and practices as described herein, and provide appropriate back pay, wages, and benefits in an amount to be shown at trial.

3. Grant Plaintiff reinstatement/promotion to the position as a GS-14 Appeals Officer retroactive to January 2017, the position and grade level to which Plaintiff would have been entitled had there been no discrimination and retaliation, and grant Plaintiff the back-pay, wages, and benefits he has been denied as a result of the discrimination he has suffered.

4. Grant Plaintiff an award of $ 300,000.00 in compensatory damages for each of Plaintiff's Claims herein to compensate him for the humiliation, emotional distress and loss of personal and professional esteem suffered by Plaintiff as a result of Defendant's intentional acts.

5. Grant Plaintiff his attorney's fees, costs and disbursements necessary to maintain this action.

6. Retain jurisdiction over this action to assure full compliance with the Orders of this Court and with applicable law, and require the Defendant to file such reports, as the Court deems necessary to evaluate such compliance.

7. Grant such other and further relief as the Court deems necessary and proper.

                                        Respectfully submitted,

                                        _/s/ *Donald S. Johnson*, _____
                                        Donald S. Johnson, Sr.
                                        Bar No. 372774
                                        1101 Golf Course Drive.
                                        Mitchellville, MD 20721
                                        301-808-6770
                                        Mylawyerjohnson@yahoo.com
                                        Attorney for Plaintiff Darren S. Johnson